THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANDREW N. EDMONDSON, JR., Defendant-Appellant.

Second District    No. 80-1003

Opinion filed May 12, 1982.

Mary Robinson, of State Appellate Defender's Office, and Gary N. Topol, both of Elgin, and Patrick J. Hughes, Jr., of State Appellate Defender's Office, of Springfield, for appellant.

Robert Morrow, State's Attorney, of Geneva (Phyllis J. Perko and Judith M. Pietrucha, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

Defendant Andrew N. Edmondson, Jr., was tried by a jury and convicted of rape (Ill. Rev. Stat. 1979, ch. 38, par. 11—1), aggravated battery (Ill. Rev. Stat. 1979, ch. 38, par. 12—4), and robbery (Ill. Rev. Stat. 1979, ch. 38, par. 18—1). He was sentenced to a term of 36 years: 26 years for rape, 5 years for robbery and 5 years for aggravated battery, to be served consecutively.

Defendant raises five issues on appeal: The first is the contention that the evidence of his guilt was entirely circumstantial and thus the trial court erred in refusing to include the second paragraph of Illinois Pattern Jury Instructions, Criminal, No. 3.02 (2d ed. 1981) (hereinafter cited as IPI Criminal) in the jury instructions; second, that the trial court exceeded its authority in directing a verdict for defendant on a home invasion count of the indictment by implying that defendant was guilty of the remaining charges; third, that the trial court erred in reserving its ruling on defendant's motion *in limine* regarding previous convictions until the close of the evidence in the defense's case; fourth, that the trial court erred in imposing a sentence of 36 years in that it did not set forth the basis for imposing consecutive sentences, and in that the trial court sentenced the defendant pursuant to personal policy rather than statutory guidelines, and in that the sentence of 36 years was excessive; fifth, that the State's failure to produce an inventory receipt during discovery resulted in surprise and prejudice to the defendant thereby denying him due process.

At trial, Esther Millim, aged 77, testified that at around 2:20 a.m. on July 5, 1980, she was home when she was awakened by shouts from her

husband's bedroom in their home at 711 Fifth Avenue in Aurora. She went to her husband's bedroom, and saw a man's form sitting on the bed. Believing it to be her husband, she put her arms around him to quiet him. Just as she realized the person was clothed and not her husband, the person said, "Give me some money." At that point Esther Millim saw her husband lying on the floor in front of his bed. She began gathering money to get the intruder out of her house. She testified that she gave him a coin purse from her husband's dresser, money from her billfold, and bills from her husband's wallet.

At trial, Esther Millim identified, as People's exhibits, her husband's coin purse, its contents: a magnet, a pocket pen, and a key on a chain with the initial "M". These were items her husband kept in the purse. She also identified, as a People's exhibit, her husband's Moose card which he kept in his wallet with his bills. The intruder told Esther Millim that if she turned on a light he would kill her and that he was going to rape her. She was then raped by the intruder.

When Esther Millim opened a side door to let the person out of her house, she saw lights in the driveway and three policemen approaching her house. The intruder fled in the other direction and escaped from the house. Paramedics then took Esther Millim and her husband to Copley Hospital.

A neighbor testified that she had called the police when she heard screaming from the Millim home around 2:20 a.m. She directed the police to the Millim home. She later observed Esther Millim open the side door and cry out. Shortly thereafter she saw a slender black man, with a dark cap or dark hair, a long-sleeved white shirt and dark pants running across the backyard. She did not notice if he wore a jacket or a vest.

At trial, Officers Koenke, Camic, Powell and Kahle testified. Their testimony was similar: They responded to a call made by a neighbor who had heard screams, and were directed to the Millim residence. When they approached the house Esther Millim was standing in the doorway, screaming that the intruder was still in the house.

Officer Camic went into the house and it became apparent that the intruder had left through a porch screen that had been cut. Camic gave chase through the backyards and observed a black male in a blue long-sleeved garment running north. He ordered the man to stop but the man kept running.

Officer Kahle testified that he responded to the call and had seen a tall slender male Negro wearing a brown hat, blue levi jacket and dark gray pants with the right side of his shirt still hanging out. He was wearing a light shirt and black vest, and his belt buckle was undone. Kahle identified himself as a police officer and told the man to freeze. The man did not stop. After again telling him to stop, the officer fired two warning

shots. The man went around a garage at 727 Fifth Avenue and the officer lost sight of him. Kahle heard two other officers telling a man to freeze behind the garage. He ran behind the garage and saw defendant lying face down between the garage and a trellis. When Officer Kahle tried to grab him, his gun discharged accidentally into the ground.

The officers testified that the defendant had a coin purse in his pocket. The contents of the purse were identified by Esther Millim at trial. There was also testimony about John Millim's injuries, including a broken collar bone.

At the close of the State's case the trial judge granted defendant's motion for a directed verdict on the charge of home invasion. Over objection by defendant, the court explained that the State had failed to introduce any evidence that defendant was not a police officer acting in the line of duty.

The jury found the defendant guilty of rape, robbery and aggravated battery. On December 4, 1980, defendant Edmondson was sentenced to a total of 36 years: 26 years on the rape charge, and 5 years each for robbery and aggravated battery, to be served consecutively. His appeal was timely filed.

The first contention made by defendant is that because all the evidence against him was circumstantial he was prejudiced by the court's failure to include in the jury instructions the second paragraph of the IPI instruction on circumstantial evidence (IPI Criminal No. 3.02). The instruction provides in its entirety:

> "Circumstantial evidence is the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend to show the guilt or innocence of [(the) (a)] defendant. Circumstantial evidence should be considered by you together with all the other evidence in the case in arriving at your verdict.
>
> You should not find the defendant guilty unless the facts or circumstances proved exclude every reasonable theory of innocence."

At the instructions conference the State tendered only the first paragraph and defendant tendered a version with both paragraphs. The court gave the State's instruction to the jury.

■■ Illinois courts have held that when proof of guilt is based entirely on circumstantial evidence the second paragraph of IPI 3.02 should be given. (*People v. Evans* (1981), 87 Ill. 2d 77, 429 N.E.2d 520; *People v. Garcia* (1981), 95 Ill. App. 3d 792, 420 N.E.2d 482.) However, courts of review are reluctant to find reversible error in the trial court's failure to give the second paragraph of IPI Criminal 3.02. (*People v. Stokes* (1981), 95 Ill. App. 3d 62, 419 N.E.2d 1181.) Thus, the failure to do so does not require reversal unless it appears that justice was denied or that the verdict

resulted from such error. *People v. Garcia*; *People v. Jones* (1980), 84 Ill. App. 3d 896, 406 N.E.2d 112; *People v. Hammers* (1976), 35 Ill. App. 3d 498, 341 N.E.2d 471, *cert. denied* (1976), 429 U.S. 1002, 50 L. Ed. 2d 614, 97 S. Ct. 534.

In the instant cause, the State first argues that the evidence was not completely circumstantial since the defendant's own statements constituted direct evidence. (*People v. Spataro* (1978), 67 Ill. App. 3d 69, 384 N.E.2d 553.) In *Spataro*, the defendant had given two pretrial and one in-court statements explaining how the incident in question occurred. Although exculpatory, the court held that these statements were direct evidence and thus justified the trial court's refusal to give the second paragraph of IPI Criminal 3.02. It is not clear that this is the Illinois rule, however, since in *People v. Stokes* the appellate court held that despite defendant's own exculpatory statement in evidence, all evidence of guilt was circumstantial. See also *People v. Garcia*; *cf. People v. Fletcher* (1976), 40 Ill. App. 3d 537, 352 N.E.2d 10, where admissions made by defendant were seen as direct evidence and court upheld the trial court's refusal to give the second paragraph.

■■ Alternatively, the State asserts that the evidence was not entirely circumstantial since Esther Millim offered direct evidence regarding the aggravated battery, rape and robbery which was corroborated by the testimony of the others at trial. Identity is only one element of proof, and this may be established by circumstantial evidence. (*People v. Sauber* (1966), 68 Ill. App. 2d 133, 214 N.E.2d 918.) The other necessary element is the *corpus delicti*. In *People v. Christiansen* (1969), 118 Ill. App. 2d 51, 254 N.E.2d 156, this court held that testimony establishing that the crime had occurred was sufficient direct evidence to justify refusing to give the second paragraph of IPI Criminal No. 3.02, even though the evidence linking the defendant to the crime was entirely circumstantial.

■■ In addition, the State cites *People v. Cross* (1981), 100 Ill. App. 3d 83, 426 N.E.2d 623, where the court noted that all evidence of guilt was circumstantial and that the trial court had refused to give the second paragraph of IPI Criminal No. 3.02. Nevertheless, since the jury had been instructed as to the presumption of innocence, the defendants were not required to prove themselves innocent, and the State was required to prove defendants' guilt beyond a reasonable doubt, the court held that there was no reversible error, stating:

> "The language of the omitted paragraph is essentially a restatement that defendants must be proved guilty beyond a reasonable doubt." (100 Ill. App. 3d 83, 90.)

In the instant matter, the jury was properly instructed that the State had the burden of proving defendant guilty beyond a reasonable doubt. Thus,

under the rule of *Cross*, the failure to give the second paragraph of IPI Criminal 3.02 was not reversible error.

Finally, defendant relies upon *People v. Evans* (1981), 87 Ill. 2d 77, 429 N.E.2d 520, in which the Illinois Supreme Court stated that the failure to give the second paragraph of IPI Criminal 3.02 required reversal where all evidence against the defendant was circumstantial, stating that in such a case, "the facts proved must be consistent with defendant's guilt and inconsistent with any reasonable hypothesis of innocence." 87 Ill. 2d 77, 83.

However, unlike *Evans*, the record here offers no reasonable hypothesis of innocence explaining Edmondson's possession of the stolen coin purse shortly after the commission of the crimes in such close proximity to the Millims' home. He was arrested only a short distance from the victims' residence, and his possession of John Millim's coin purse was testified to by at least three police officers. His explanation that it was "planted on him" was not convincing. There was also testimony from witnesses who gave descriptions of the man running from the scene of the crime. In contrast to the situation in *Evans*, there was sufficient direct evidence of fact before the jury to establish Edmondson's guilt and no reasonable hypothesis of innocence.

This result is consistent with the well established rule that failure to give the second paragraph of IPI Criminal 3.02 does not require reversal unless it appears that justice was denied or that the verdict resulted from such error. (*People v. Jones* (1980), 84 Ill. App. 3d 896, 406 N.E.2d 112; *People v. Hammers* (1976), 35 Ill. App. 3d 498, 341 N.E.2d 471, *cert. denied* (1976), 429 U.S. 1002, 50 L. Ed. 2d 614, 97 S. Ct. 534.) Therefore, even if we were to assume that all evidence of Edmondson's guilt was circumstantial and that the trial court erred in not giving the second paragraph of IPI Criminal No. 3.02, his conviction should not be reversed since it does not appear that justice was denied or that the verdict would have differed if the entire instruction had been given. We see no error in this regard.

The defendant's next contention is that the trial court erred in explaining to the jury why it was granting defendant's motion for directed verdict on the home invasion charge. The court read the home invasion statute to the jury and then stated:

> "This offense, ladies and gentlemen, will not be presented to you for consideration in that it is the opinion of this Court that the State has failed to prove one of the necessary elements of the offense, that is that the Defendant is not a police officer, nor if a police officer, was acting in the line of duty."

The defendant had objected to allowing an explanation to the jury. He

now contends that this statement inferred that the defendant was guilty of the other charges.

This issue was not raised in defendant's post-trial motion. (Ill. Rev. Stat. 1979, ch. 38, par. 116—1.) The general rule is that failure to specifically raise a claim of error in a post-trial motion constitutes a waiver precluding consideration of such issues on review. *People v. Jackson* (1981), 84 Ill. 2d 350, 418 N.E.2d 739.

■■ When a claim of error has not been so preserved it will only be considered by a reviewing court under the plain error doctrine set forth in Supreme Court Rule 615(a) (73 Ill. 2d R. 615(a)).

The Illinois Supreme Court observed in *People v. Carlson* (1980), 79 Ill. 2d 564, 576, 404 N.E.2d 233:

> "A significant purpose of the plain error exception to the waiver doctrine is to correct any serious injustices which have been done to the defendant. It therefore becomes relevant to examine the strength or weakness of the evidence against him; if the evidence is close, there is a possibility that an innocent person may have been convicted due to some error which is obvious from the record, but not properly preserved. Thus, this court has held that where the evidence is closely balanced, a court of review may consider errors that have not been properly preserved for review."

■■ In the case before this court, the record and evidence overwhelmingly favor the State. We see no plain error. Defendant asserts that the waiver rule should not be strictly applied because, since his counsel did not have a transcript at the time of the post-trial motion, he expressly stated that he did not intend to waive or limit any claim of error not specifically included. However, the court addressed this issue in *People v. Rogers* (1975), 32 Ill. App. 3d 788, 790, 336 N.E.2d 784, and held, contrary to defendant's argument, that to allow such a request would destroy the rationale behind post-trial motions.

Further, even if defendant's contention was not considered waived, the same issue was resolved against defendant in the analogous case of *People v. Davis* (1974), 19 Ill. App. 3d 848, 312 N.E.2d 343. Thus, we see no error in this regard.

Defendant next argues that the trial court erred by not ruling on his motion *in limine*. The motion concerned defendant's recent convictions for burglary, aggravated battery and intimidation (reduced from rape).

■■ Defendant failed to preserve this issue in his post-trial motion. Therefore this contention will be considered under the plain error doctrine. (73 Ill. 2d R. 615(a).) At the close of the State's evidence the defendant requested that the judge rule on his motion *in limine*. The court stated it would withhold ruling until the end of the defense's cases.

Defendant did not object at that time nor did he later request a ruling on the motion. Defendant did not testify. It is well established in Illinois that when a court reserves its ruling on admissibility of evidence, the objecting party must insist upon a later rule or risk waiving its objection unless substantial prejudice results. (*People v. Waller* (1977), 67 Ill. 2d 381, 367 N.E.2d 1283.) Defendant contends that he was prejudiced by the judge's refusal to rule on his motion, alleging that this is why defendant did not testify. However, in *People v. Leonard* (1980), 83 Ill. 2d 411, 423, 415 N.E.2d 358, the Illinois Supreme Court specifically held that this argument is without merit. Thus, defendant's arguments regarding this issue must fail. We see no plain error.

The defendant next makes three contentions regarding the sentence imposed on him. First he argues that the trial court did not properly set forth the basis for imposing consecutive sentences.

■■ The defendant correctly states that under section 5—8—4(b) of Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—4(b)), a trial court is required to set forth its reasons for imposing consecutive sentences. We are of the opinion that this provision has been complied with in the instant case.

Immediately prior to sentencing the trial court stated that it had considered the presentence report and had noted the defendant's history of prior felony convictions and the arguments of counsel. The court stated:

> "That it's my opinion, by reason of those prior convictions and the convictions in this incident, that Mr. Edmondson has a propensity to commit crimes and is not a suitable candidate for probation with respect to two of the offenses which are probationable.
>
> That the past record of three probations followed in each instance by continued criminal conduct and felony convictions clearly indicates the failure of the efforts to rehabilitate this defendant.
>
> Further probation I feel, if it were to be considered, would deprecate the seriousness of the defendant's conduct and would be inconsistent with the ends of justice.
>
> That, therefore, the imprisonment of the defendant is necessary for the protection of the public."

The court then imposed a sentence on each crime and stated, "It's further ordered that the foregoing sentencing be served consecutively." The trial court reconvened the parties the next day and again stated its reasons for imposing consecutive sentences.

In *People v. Johnson* (1981), 98 Ill. App. 3d 228, 424 N.E.2d 610, the court faced a similar issue. The defendant alleged that the trial court's

reasons for imposing a term of years did not satisfy the requirements of section 5—8—4(b) that a court must be of the opinion that consecutive terms are necessary to protect the public from further criminal conduct by a defendant.

The *Johnson* court held that to accept defendant's arguments would result in promoting form over substance and a squandering of judicial resources. (*People v. Johnson* (1981), 98 Ill. App. 3d 228, 235-36, 424 N.E.2d 610, 617.) The record clearly indicates the court's opinion that defendant should be imprisoned because of his propensity to commit crimes. We find no error.

The defendant also argues that the court sentenced him pursuant to personal policy rather than statutory guidelines.

Rape is a Class X felony with a minimum sentence of six years and a maximum sentence of 30 years. (Ill. Rev. Stat. 1979, ch. 38, par. 11—1.) Furthermore, at defendant's sentencing hearing the prosecutor repeatedly requested an extended term of 74 years. The court declined to impose an extended sentence, even after determining that the defendant so qualified.

The court then sentenced defendant to determinant terms of five years each on the aggravated battery and robbery convictions. In imposing the sentence for rape the trial court judge characterized the crime as the most reprehensible next to murder, a crime which would leave the victim with a permanent scar. He stated that rape is a crime for which no restitution is possible and that although a Class X crime this had had little effect as a deterrent. The judge stated his belief that there has been an increase in rape and went on to observe:

> "That the day may very well come when our society may approve and may even demand more effective punishment too involving the invasion of the body of another, be that victim young or old, male or female."

The judge then sentenced the defendant to a term of 26 years for rape to run consecutively with the other sentences of 5 years.

■■ Even though the statements of the trial court display the court's repugnance at defendant's offense, this does not necessarily constitute prejudice since, as the State points out, this view is shared by the United States Supreme Court which held in *Coker v. Georgia* (1977), 433 U.S. 584, 597, 53 L. Ed. 2d 982, 992-93, 97 S. Ct. 2861, 2869, that "[s]hort of homicide, it is the 'ultimate violation of self.' " The court's repugnance could be seen as reasonable under these circumstances. We see no grounds for reversal.

■■ Defendant next contends that his determinant sentence was excessive. We disagree. The correct standard of review in regard to sentencing is whether the trial court abused its discretion in determining the sentence.

(*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) The sentence imposed was well within the statutory limits. It was not excessive. *People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344.

■■ Defendant's final contention is that he was denied due process by the State's failure to produce an inventory receipt. At trial, Officer Lawler was testifying as to the inventory of defendant's personal property taken from him upon his arrest. He testified that he had defendant sign a list of the items. At this point counsel for the defense objected. Arguing both surprise and prejudice, he moved for a mistrial. Counsel for defense had filed a written discovery motion requesting items inclusive of a property receipt. Defense counsel had not been provided with a copy of the property receipt allegedly signed by Mr. Edmondson. The State responded (1) that the State did not plan on putting the signed property receipt into evidence; and (2) that defense counsel could cross-examine regarding the signed property receipt. The motion for a mistrial was denied and the testimony was allowed to stand although the property receipt was not introduced into evidence.

In *People v. Hambrick* (1979), 68 Ill. App. 3d 447, 386 N.E.2d 455, the Appellate Court for the First District faced a similar issue. In that case the court held that a showing of prejudice is necessary to establish that the introduction of evidence not included in response to discovery constitutes reversible error. The defendant must demonstrate that he was thereby prejudiced. (*People v. Green* (1976), 42 Ill. App. 3d 978, 356 N.E.2d 947.) Furthermore, the claim of prejudice cannot be founded on mere conjecture. *People v. Lewis* (1975), 60 Ill. 2d 152, 330 N.E.2d 857.

In the instant matter, even if the signed property receipt had been introduced into evidence the defendant could not convincingly demonstrate that he was thereby prejudiced. The defendant complains that the property receipt established his possession of the coin purse stolen from John Millim. However, defendant's possession of the coin purse was testified to at trial by at least three police officers. In addition, the coin purse was positively identified at trial by Esther Millim as the one that had been stolen from her husband. Therefore defendant's contention is without merit.

For these reasons the judgment of the circuit court of Kane County is affirmed.

Affirmed.

SEIDENFELD, P. J., and VAN DEUSEN, J., concur.